IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**SCOTT MILLER**,

        Plaintiff,

   v.

**CITY OF PORTLAND, a municipal corporation, DEAN HALLEY, personally, and MICHAEL REESE, personally**,

        Defendants.

No. 3:11-cv-01509-JE

OPINION AND ORDER

**MOSMAN, J.**,

The parties filed cross motions for summary judgment in this suit for wrongful arrest, excessive force, negligence, and battery.  Magistrate Judge Jelderks issued his Findings and Recommendation ("F&R") [49], recommending that Plaintiff's Motion for Summary Judgment [32] be DENIED in full and that Defendants' Motion for Partial Summary Judgment [36] be GRANTED in part and DENIED in part.  Plaintiff objected to the F&R.[1]  I GRANT Defendants' Motion for Summary Judgment [36] and DENY Plaintiff's Motion for Summary Judgment [32].

---

[1] Defendant Halley also initially filed objections [52] to the F&R but subsequently filed a Motion to Withdraw Objections [53].  I GRANT the motion.

1 – OPINION AND ORDER

**BACKGROUND**

Around seven o'clock in the morning on June 22, 2011, Scott Miller, on his way to work, was walking toward a bus stop located on the east side of Southwest Second Avenue, near its intersection with Southwest Madison Street. (Miller Decl. [34] ¶ 2.) Second Avenue runs one-way north through downtown Portland.

Mr. Miller was walking north on Second Ave., and needed to cross the street in order to reach this bus stop. (*Id.* ¶ 2; Miller Depo. [41-1] at 31:11–18.) While walking north on Second Avenue, Mr. Miller noticed a police officer—Defendant Halley—standing on the southwest corner of Second and Madison talking with another person. (Miller Depo. [41-1] at 33:7–11, 34:8–23.)

As Mr. Miller approached Madison Street, he thought he saw his bus approaching "from the corner of [his] eye." (Miller Decl. [34] ¶ 2.) He explains that this is why he "jaywalked" across the street towards the bus stop. *Id.* After the last oncoming traffic on Second Avenue passed, Mr. Miller "ran across" the street in the middle of the block. (Miller Depo. [41-1] at 29:7–10.) He acknowledges that he was never within a crosswalk. *Id.* at 29:17–21.

Ultimately, Mr. Miller was cited for and convicted of the traffic violation of failure to obey a traffic control device. *Id.* at 29:22–30:11. He has paid the fine associated with the conviction and does not dispute his liability for the offense. *Id.* at 30:12–31:4. This opinion addresses Mr. Miller's claim for wrongful arrest under the Fourth Amendment, which arises from the circumstances surrounding this jaywalking offense. He has brought suit against City of Portland Police Officer Dean Halley, the officer who Mr. Miller had noticed standing at the corner of Second and Madison and who observed him committing the jaywalking offense.

I. <u>**Mr. Miller's Interaction with Officer Halley**</u>

Defendant Officer Halley and Mr. Miller do not disagree on the basic facts surrounding their interaction on the morning of June 22, but they submit different characterizations of their own and each other's demeanor during the interaction. The F&R [49] provides a thorough summary of the facts as set out by both parties, which I adopt as an accurate summary of the parties' respective positions. (F&R [49] 2–7.) I thus discuss only those facts of particular relevance to the Fourth Amendment wrongful arrest claim here.

Both parties agree that Officer Halley noticed Mr. Miller while he was jaywalking across the street and called out "Sir!" to get his attention. (Halley Decl. [38] ¶ 7; Miller Decl. [34] ¶ 3.) Both parties agree that Mr. Miller did not respond. (Halley Decl. [38] ¶ 7; Miller Decl. [34] ¶ 3.) Officer Halley attests that "Miller appeared to ignore me, and continued walking across the street." (Halley Decl. [38] ¶ 7.) Mr. Miller explains that he ignored this call because he "assumed" the person calling to him was "a panhandler asking me for money." (Miller Decl. [34] ¶ 3.)

Officer Halley attests that as soon as the pedestrian signal for the crosswalk across Second Avenue changed, he walked "quickly" across the street towards Mr. Miller (who was now standing near the bus stop.) (Halley Decl. [46] ¶ 4.) He explains that he "intended to remind Miller not to jaywalk, especially in front of a police officer." (Halley Decl. [38] ¶ 8.) However, he attests that he "immediately knew Mr. Miller was jaywalking and had committed the offense of failing to obey a pedestrian signal." *Id.* ¶ 7. Officer Halley called out "Sir!" a second time. (Miller Decl. [34] ¶ 3.) Officer Halley attests that Mr. Miller continued to face away from him, while Mr. Miller explains that he "stopped and turned around" when he heard this second call. (Halley Decl. [46] ¶¶ 4–5; Miller Decl. [34] ¶ 3; Miller Depo. [41-1] at 39:10–22.)

3 – OPINION AND ORDER

Officer Halley approached Mr. Miller and asked for his identification.  (Miller Depo. [41-1] at 40:18–19; Miller Decl. [34] ¶ 3.)  Defendants' position is that Mr. Miller responded sarcastically to Officer Halley, refusing to turn and face him while saying "Are you going to hurt me?" in a "sarcastic tone of voice."  (Halley Decl. [46] ¶ 5.)  Officer Halley then told Mr. Miller that he was stopping him for jaywalking and asked for his identification, to which Mr. Miller responded "Why?" in "a belligerent tone of voice with his torso facing away from [Officer Halley]."  *Id.* ¶ 6.  Officer Halley attests that he "became concerned that Miller might try and flee."  *Id.* ¶ 9.  He thus instructed Mr. Miller to put his hands on top of his head, intending to handcuff him while investigating the traffic violation.  *Id.*  However, he explains, Mr. Miller did not comply with the command to place his hands on his head.  *Id.*

Officer Halley then "took hold of" Miller's wrist to handcuff him.  Officer Halley attests that Mr. Miller "spun around quickly . . . in an aggressive manner" to face Officer Halley.  *Id.*  He explains that he then decided to "take Mr. Miller to the ground to better control his actions and to complete the handcuffing" and so he "got" Mr. Miller "off balance" and "guided him to the sidewalk."  *Id.* ¶ 10.

Mr. Miller does not dispute that he initially ignored Officer Halley and that he said "Are you going to hurt me?," but he describes the situation very differently.  He contends that he was facing Officer Halley when he said "are you going to hurt me?" and that he asked this question because he was genuinely "scared" that Officer Halley might use "disproportional violence."  (Miller Depo. [41-1] at 45:18–25.)  He attests that he was in the act of reaching for his identification, intending to hand it to Officer Halley, when Officer Halley grabbed his arm to handcuff him.  (Miller Decl. [34] ¶ 4.)  According to Mr. Miller, Officer Halley "pushed [him] to the ground by kicking at the backs of [his knees]," and Mr. Miller "was thrown to the ground on

[his] stomach." (Miller Decl. [34] ¶ 5; Miller Depo. [41-2] at 57:6.) He attests that Officer Halley "knocked" the ID onto the ground while handcuffing him.[2] (Miller Decl. [34] ¶ 5.) It is uncontested that Officer Halley ordered Mr. Miller to place his hands on his head and that Mr. Miller did not comply.

A squad car driven by another officer arrived, and Mr. Miller was placed in the car and driven around the block to the front of the police station.[3] (Halley Decl. [46] ¶ 14; Miller Decl. [34] ¶¶ 7–8.) He was never "booked" or even taken inside the station, but instead was issued a citation for the traffic violation and released. (Halley Decl. [46] ¶ 14; Miller Dep. [41-2] at 75:23–77:7, 83:6–17.) As noted, Mr. Miller was subsequently convicted of the jaywalking offense and has paid the fine assessed. (Miller Depo. [41-1] at 31:1–2.)

## II.   Mr. Miller's Claims

Mr. Miller brought suit on five claims arising from the events of June 22, 2011. Three claims, brought under 42 U.S.C. § 1983, are for violations of the Fourth Amendment: excessive force against Officer Halley, wrongful arrest against Officer Halley, and ratification of Officer Halley's conduct against the city and Chief of Police Michael Reese.[4] Two other claims against the city are for violations of state law: negligence, for "failing to administer violation training," failing to "hire, train, and supervise employees regarding ticketing and investigating violation

---

[2] Officer Halley disagrees, attesting that Mr. Miller "never attempted to hand me his identification prior to me handcuffing him" and that he "never knocked any identification out of Miller's hand." (Halley Decl. [46] ¶ 11.)

[3] The parties disagree about Mr. Miller's physical condition from the time he was placed in the squad car to his arrival at the police station. Mr. Miller attests that he was suffering a panic attack by the time he arrived at the police station; he was examined by paramedics and given oxygen outside the building. (Miller Decl. [34] ¶¶ 7–11.) As noted in the F&R, these disagreements may be material to whether Officer Halley used excessive force during the interaction with Mr. Miller. (F&R [49] at 17–19.) For the reasons discussed below, this dispute is not material to the wrongful arrest claim, and I thus decline to discuss it in detail here.

[4] This claim is governed by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

suspects safely," and failing to "hire, train, and supervise employees regarding safe restraint of civilians;" and battery, under a *respondeat superior* theory. (Compl. [1] ¶¶ 27, 31–32.)

Mr. Miller has conceded his § 1983 claim against the City and Mr. Reese. (Pl.'s Mot. for Summary Judgment [32] at 1.) As such, Plaintiff's third claim is DISMISSED as to all defendants.

### III.  Magistrate Judge's Recommendation

Defendants moved for summary judgment on Mr. Miller's claims for wrongful arrest in violation of the Fourth Amendment and for state law negligence [36]. Plaintiff moved for summary judgment on all claims [32].

#### A.  *Defendants' Motion for Partial Summary Judgment: Second and Fourth Claims*

The magistrate judge recommends that Defendants' motion [36] be GRANTED as to the state law negligence claim, concluding that no reasonable jury could find that the City was "negligent in its hiring, training, or supervision of its police officers regarding the distinctions between levels of criminal offenses or on the lawful use of force" based on the evidence in the record. (F&R [49] at 21.) I agree, and adopt his opinion as to the negligence claim as my own. There is no dispute of material fact as to whether the City is liable for negligent training or supervision of Portland police officers. Defendants' Motion for Partial Summary Judgment [36] is GRANTED as to claim four.

The magistrate judge recommends that the Defendants' motion [36] be denied as to the Fourth Amendment wrongful arrest claim, reasoning that there is a dispute of material fact as to whether (1) Mr. Miller was arrested within the meaning of the Fourth Amendment; and (2) if he was arrested, whether the arrest was reasonable. As discussed below, I find that under *Virginia v. Moore*, 553 U.S. 164 (2008), Mr. Miller's arrest would not have been unreasonable within the

6 – OPINION AND ORDER

meaning of the Fourth Amendment.[5]  Consequently, I also GRANT Defendants' motion [36] as to the Fourth Amendment wrongful arrest claim.

### B.    Plaintiff's Motion for Summary Judgment

Mr. Miller moved for summary judgment [32] on all four remaining claims, arguing that there is no dispute of material fact as to each of these claims: (1) wrongful arrest in violation of the Fourth Amendment; (2) use of excessive force in violation of the Fourth Amendment; (3) state law negligence by Defendant City of Portland; and (4) state law battery.  The magistrate judge recommends that this motion be DENIED.  I agree, and adopt his opinion regarding Mr. Miller's motion [32] as my own.  The record does not establish that Mr. Miller is entitled to judgment as a matter of law on any of his claims.

## LEGAL STANDARDS

The magistrate judge makes only recommendations to the court, to which any party may file written objections.  I am not bound by the recommendations of the magistrate judge; instead, I retain responsibility for making the final determination.  I am required to review de novo those portions of the report or any specified findings or recommendations within it as to which an objection is made.  28 U.S.C. § 636(b)(1).  However, I am not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no party has objected.  *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  While the level of scrutiny I am required to apply to the F&R depends on whether objections have been filed, in either case I am free to accept, reject, or modify any part of the F&R.  28 U.S.C. § 636(b)(1).

---

[5] For purposes of the Fourth Amendment wrongful arrest claim, I assume without deciding that Mr. Miller was arrested (rather than merely detained).  As discussed below, even if Mr. Miller were arrested, that arrest would not have violated the Fourth Amendment.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial responsibility of informing the court of the basis of its motion and providing evidence that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden is met, the non-moving part must "present significant probative evidence tending to support its claim or defense." *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (internal quotation marks omitted). The non-moving party fails to meet its burden if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id*. (quoting *Matsushita*, 475 U.S. at 587).

## DISCUSSION

I agree with the magistrate judge's conclusion that the record on summary judgment does not firmly establish whether Mr. Miller was taken into full custodial arrest during these events.[6] However, the existence of an arrest need not be determined here. Even if Mr. Miller was arrested, his arrest would not have violated the Fourth Amendment because Officer Halley had probable cause to arrest Mr. Miller for the jaywalking offense.[7] Because I find no constitutional

---

[6] As noted, I also agree that the facts and circumstances surrounding the encounter are disputed such that summary judgment on the Fourth Amendment excessive force claim or the state law battery claim is inappropriate. Whether Officer Halley used excessive force on June 22, 2011 is a jury question. My holding does not preclude the possibility that Mr. Miller was battered, notwithstanding that his arrest would not have violated the Fourth Amendment. Liability for battery turns on state law, and there are disputes of material fact going to the lawfulness (under Oregon law) of Officer Halley's physical interaction with Mr. Miller.

[7] Defendants have articulated an alternative ground for a finding of probable cause to arrest: that Mr. Miller violated Oregon law when he failed to place his hands on his head at Officer Halley's request. Or. Rev. Stat. § 162.247(1)(b) (prohibiting the failure to "obey a lawful order" from a police officer). This order was lawful, they contend, because Officer Halley was entitled by law to "detain" Mr. Miller while investigating the jaywalking offense, even though Oregon law did not allow him to arrest Mr. Miller for that offense. On this record, however, I cannot conclude that Officer Halley had probable

violation, Officer Halley is entitled to qualified immunity. Further, even if it were found that Mr. Miller's constitutional right to be free from unreasonable seizure had been violated, I hold that it was not clearly established that Officer Halley's conduct here violated that right, and thus Officer Halley would still be entitled to qualified immunity.

I.      **Mr. Miller's Arrest Did Not Violate His Constitutional Rights**

Officer Halley observed Mr. Miller in the act of violating Or. Rev. Stat. § 814.020, which provides that it is an offense for a pedestrian to "fail[ ] to obey any traffic control device specifically applicable to the pedestrian." Thus, I find that even if Mr. Miller was arrested, his arrest would not have been unreasonable within the meaning of the Fourth Amendment.

   A.      *Oregon's Definition of the Jaywalking Offense*

The magistrate judge reasoned that *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), and *Moore* would not apply to this case because failure to obey a traffic control device is not a "crime" in Oregon. Rather, it is designated a "traffic violation." (F&R [49] at 13–14.) This is an accurate statement of Oregon law, but it is not determinative of whether Officer Halley could properly arrest Mr. Miller as a matter of federal constitutional law.

The State of Oregon has divided "offenses" into two categories:

> An offense is conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law or ordinance of a political subdivision of this state. An offense is either a crime [ ] or a violation [ ].

Or. Rev. Stat. § 161.505. An offense is a *violation* if it is punishable by a fine, but not a term of imprisonment. Or. Rev. Stat. § 153.008(1). In general, an offense is a *crime* if it is one "for which a sentence of imprisonment is authorized." Or. Rev. Stat. § 161.515(1)**.** Violations,

---

cause to arrest Mr. Miller based on his failure to obey the order that he place his hands on his head. I thus decline to base my holding on this rationale.

unlike crimes, do not "give rise to any disability or legal disadvantage based on conviction of a crime." Or. Rev. Stat. § 153.008(2).

The offense for which Mr. Miller was cited on June 22, 2011, failure to obey a traffic control device, is found in the Oregon Vehicle Code, which governs the conduct of pedestrians on the road. The Oregon Vehicle Code contains both "traffic violations" and "traffic crimes."[8] The offense of failure to obey a traffic control device is a "traffic violation." Or. Rev. Stat. § 814.020. A traffic violation is a "traffic offense . . . that is punishable by a fine but that is not punishable by a term of imprisonment" or that is designated as such in the pertinent statute. Or. Rev. Stat. § 801.557.[9] Police officers are not given authority to arrest a person for the commission of a traffic violation; they are given authority to arrest a person for commission of a traffic crime. Or. Rev. Stat. § 810.410. Thus, under Oregon law, Officer Halley had no authority to arrest Mr. Miller for jaywalking.[10]

### B. *Arrest is Proper Where an Offense Has Been Committed in the Arresting Officer's Presence*

The Supreme Court held in *Atwater* that it is not a violation of the Fourth Amendment for an officer to arrest a person who is in clear violation of law, even if the offense is minor and nonviolent. 532 U.S. at 354. The plaintiff, a mother who was taken into full custodial arrest after she was found to be in violation of Texas's seatbelt law while driving through her neighborhood with her two young children, urged the court to hold that warrantless arrest is unreasonable within the meaning of the Fourth Amendment "when conviction could not

---

[8] *See* Or. Rev. Stat. § 801.545 (defining "traffic crime" to include any traffic offense punishable by a jail sentence); Or. Rev. Stat. § 801.557.

[9] It is relevant to note that driving in excess of a speed limit, or "speeding," is also a traffic violation—and not a crime—in Oregon. *See* Or. Rev. Stat. § 811.109; Or. Rev. Stat. § 811.111.

[10] As noted above, I assume without deciding that Mr. Miller was arrested. This assumption is operative only as to the Fourth Amendment wrongful arrest claim, and should not be read to affect any of Mr. Miller's other claims.

ultimately carry any jail time and when the government shows no compelling need for immediate detention."[11] *Atwater*, 532 U.S. at 323–24, 345–50. Ms. Atwater argued that the Court could draw a line between offenses for which a jail sentence is possible and those for which it is not, and hold that warrantless arrest for the latter is unreasonable absent some sort of exigent circumstances. *Id.* at 348–49. She proposed qualifying the jail-fine distinction with a "proviso authorizing warrantless arrests where 'necessary for enforcement of the traffic laws or when [an] offense would otherwise continue and pose a danger to others on the road.'" *Id.* at 349 (alteration in original) (quoting Br. for Pets. at 46).

In considering the practical application of such a rule, the Court specifically discussed its application to speeding. *Id.* The Court found the proposed proviso to be highly unworkable, noting that whether the general rule disallowing arrest or its exceptions would apply to a person pulled over for speeding was entirely unclear. The Court reasoned as follows:

> The proviso only compounds the difficulties. Would, for instance, either exception apply to speeding? At oral argument, Atwater's counsel said that "it would not be reasonable to arrest a driver for speeding unless the speeding rose to the level of reckless driving." But is it not fair to expect that the chronic speeder will speed again despite a citation in his pocket, and should that not qualify as showing that the "offense would . . . continue" under Atwater's rule? And why, as a constitutional matter, should we assume that only reckless driving will "pose a danger to others on the road" while speeding will not?

---

[11] Ms. Atwater had first argued that the common law and thus the Fourth Amendment forbade warrantless arrest for misdemeanors, as opposed to felonies, unless the misdemeanor amounted to a breach of the peace. *Atwater*, 532 U.S. at 326–27. The Court carefully analyzed contemporaneous commentaries, statutes, and other historical evidence of the 1791 understanding of the Fourth Amendment's protection against unreasonable searches and seizures. *Id.* at 327–45. Its conclusion was that the Fourth Amendment was not intended to incorporate any rule limiting the warrantless arrest power for misdemeanors to those constituting a breach of the peace. *Id.* at 338–45. Having concluded that history provided "no clear answer," the Court turned to Ms. Atwater's contention that the proper balance between individual and societal interests, as measured by "traditional standards of reasonableness," proscribed warrantless arrest for such minor, nonviolent crimes as failing to wear one's seatbelt. *Id.* at 345–46.

11 – OPINION AND ORDER

*Id.* (alteration in original) (internal citation omitted).  As noted, *supra* n.9, driving in excess of the speed limit is an Oregon "traffic violation," and not a "crime."  It is clear that the *Atwater* Court contemplated the potential application of its holding to a warrantless arrest for speeding, and determined that such an arrest would not be unreasonable as a matter of federal constitutional law.

      In *Moore*, the Supreme Court held that even in the face of state law prohibiting arrest for the crime at issue, custodial arrest for an offense does not violate the Fourth Amendment where supported by probable cause.  553 U.S. at 176.  In that case, a criminal defendant challenged the admissibility of evidence obtained in a search incident to his arrest for the Virginia misdemeanor of driving with a suspended license.  *Id.* at 167–68.  Virginia law expressly prohibited custodial arrest for this misdemeanor, and the defendant argued that the arrest (and consequently the search) was illegal and thus unreasonable under the Fourth Amendment.  *Id.*  The Court disagreed, reasoning that state law cannot be used as the measuring stick of reasonableness for purposes of the Fourth Amendment.  *Id.* at 171–73.

      Noting that interpretation of the Fourth Amendment begins with a consideration of its historical meaning, the *Moore* court observed historical evidence showing that "founding-era citizens were skeptical of using the rules for search and seizure set by government actors as the index of reasonableness."  *Id.* at 169–70.  In consideration of whether the Fourth Amendment should be interpreted to incorporate subsequent state law limitations on arrest power, the Court noted that to its knowledge "[n]o early case or commentary . . . suggested the Amendment was intended to incorporate subsequently enacted statutes."  *Id.* at 169.  To the contrary, the Court identified early cases in which plaintiffs contended that an arrest violated state statutory law, but

did not even argue that their arrest violated state constitutional provisions paralleling the Fourth Amendment. *Id.* at 170.

Having found no obvious answer in history, the Court took up the question whether the defendant's arrest was unreasonable "in light of traditional standards of reasonableness." *Id.* at 171. The Court's conclusion was swift, and in the negative: "In a long line of cases, we have said that when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable." *Id.* (citing, *inter alia, Atwater*, 532 U.S. at 354.)

The Court went on to explain that a state's decision "to protect privacy beyond the level that the Fourth Amendment requires" is "irrelevant" to the parameters of the Fourth Amendment's protections. *Id.* at 171–72 (citing *California v. Greenwood*, 486 U.S. 35 (1988); *Cooper v. California*, 386 U.S. 58 (1967)). "'[W]hether or not a search is reasonable within the meaning of the Fourth Amendment,'" the Court explained, "has never 'depend[ed] on the law of the particular State in which the search occurs.'" *Id.* at 172 (quoting *Greenwood*, 486 U.S. at 43 (alterations in original)). Mr. Moore had argued that a State has "no interest in arrest when it has a policy against arresting for certain crimes." *Id.* at 173. The Court disagreed, noting that arrest still serves important law enforcement interests, such as "ensur[ing] a suspect's appearance at trial, prevent[ing] him from continuing his offense, and enabl[ing] officers to investigate the incident more thoroughly." *Id.* at 174. A State's decision to place more value on competing interests, such as cost savings or greater privacy protections, does not nullify these interests. *Id.* The Court concluded that while "[a] State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, [ ] its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional." *Id.*

Here, Oregon has prohibited a particular type of seizure—arrest for traffic violations. While *Moore* involved a challenge to a search, and Mr. Miller's case involves a seizure, the principle underlying the holding of *Moore* applies equally here. *See Moore*, 553 U.S. at 171–74 (discussing precedent from cases involving both search and seizure as relevant to the issue at hand). The *Moore* court concluded that a State's decision to provide protections beyond what the Fourth Amendment requires does not render actions taken by police in violation of state law violations of the Fourth Amendment. *Moore*, 553 U.S. at 171. Just as Virginia had elected "to protect privacy beyond the level that the Fourth Amendment requires" by prohibiting arrest for the offense of driving with a suspended license, Oregon has elected such protections by prohibiting arrest for traffic violations, such as the jaywalking offense. Thus, that Oregon prohibits arrest for the jaywalking offense cannot transform the arrest into a constitutional violation if it was based on probable cause.

Probable cause exists where "the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)); *see also Bailey v. Newland*, 263 F.3d 1022, 1031 (9th Cir. 2001).

On the record before me, I find that facts within Officer Halley's knowledge on the morning of June 22, 2011, supported probable cause to believe that Mr. Miller had committed the offense of failure to obey a traffic control device. Officer Halley saw Mr. Miller in the act of

crossing Second Avenue in the middle of the block and against the pedestrian signal, a clear violation of law.  (Halley Decl. [46] ¶¶ 2–3.)  He attests that he "immediately knew Mr. Miller was jaywalking and had committed the offense of failing to obey a pedestrian signal." *Id.* ¶ 3. Mr. Miller does not contest his liability for the jaywalking offense.  (Miller Depo [41-1] at 30:9–17.)  Thus, the record makes it clear that Officer Halley was aware of facts that would have given rise, in the mind of a man of reasonable caution, to probable cause to believe that Mr. Miller had committed the jaywalking offense.  *See Devenpeck*, 543 U.S. at 152 (citing *United States v. Watson*, 423 U.S. 411, 417–424 (1976)) ("In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed").

The magistrate judge distinguished Mr. Miller's case from *Moore*, emphasizing that Oregon has defined failure to obey a traffic control device as a "violation" and not a "crime." (F&R [49] at 14.)  He notes that *Moore* and *Atwater* addressed offenses of a criminal nature, typically described as either misdemeanors or felonies. *Id.*  Observing that the offense at issue in *Moore* was a misdemeanor, he thus concluded that the holding of *Moore* is not "dispositive when applied to a situation that involved the warrantless detention of [Mr. Miller] after he was observed committing the non-arrestable, non-criminal, violation of failing to obey a traffic control device." *Id.*

I cannot agree.  The principle behind *Moore* is that state law does not define the protections against unreasonable search and seizure afforded by the Fourth Amendment.  This principle holds true whether the offense for which state law prohibits arrest is a misdemeanor or a "violation."  That Oregon has denominated this particular offense a "violation" rather than a

15 – OPINION AND ORDER

"crime" is immaterial to the scope of the Fourth Amendment, and thus this denomination cannot affect the propriety of any arrest thereunder.

Oregon's redefinition of certain violations of its laws as mere "violations," and not "crimes," cannot be held to affect the parameters of the Fourth Amendment's protections. *See Devenpeck*, 543 U.S. at 154 (quoting *Whren v. United States*, 517 U.S. 806, 815 (1996)) (recognizing that the meaning of the Fourth Amendment cannot "vary from place to place and from time to time"). Were it so, a State would render otherwise constitutional actions unconstitutional simply by changing the terminology with which it refers to violations of law. The interests discussed by the Supreme Court in *Moore* apply equally to investigation of traffic violations and the enforcement of the traffic laws. Arrest can "ensure a suspect's appearance at trial, prevent him from continuing his offense, and enable officers to investigate the incident more thoroughly" whether the offense at issue is a Virginia misdemeanor or an Oregon traffic violation. *See Moore*, 553 U.S. at 174. Oregon's choice of a "more restrictive" policy "does not render the less restrictive ones unreasonable." *See id.*

The Ninth Circuit reiterated the principle that state law does not define the protections of the Fourth Amendment in *Martinez-Medina v. Holder*, 673 F.3d 1029, 1036–37 (9th Cir. 2010). Oregon law expressly forbids Oregon law enforcement agencies from "us[ing] agency moneys, equipment or personnel for the purpose of detecting or apprehending persons whose only violation of law is that they are persons of foreign citizenship present in the United States in violation of federal immigration laws." *Id.* at 1036 (alteration in original) (citing Or. Rev. Stat. § 181.850). In *Martinez-Medina*, an Oregon deputy sheriff had arrested the petitioners based solely on their admission that they were present in the country illegally; the court assumed without deciding that the arrest violated Or. Rev. Stat. § 181.850. The court recognized that an

officer's violation of this Oregon law does not constitute a violation of the Fourth Amendment, concluding that "even if a reasonable Oregon law enforcement officer should have known he lacked authority under his own state's law to apprehend aliens based solely on a violation of federal immigration law," his conduct would not violate the Fourth Amendment. *Id.* at 1036–37.

### C. *Officer Halley's Subjective Reason for the Arrest is Irrelevant*

Mr. Miller argues that because the offense cited by Officer Halley at the time he began to handcuff him—"failure to produce ID for a citation"—is not actually a violation of Oregon law, arrest was per se illegal. (Pl.'s Obj. [51] at 2; Pl.'s Mem. [33] at 8.) The contention is that even if Officer Halley had probable cause to believe Mr. Miller had committed the jaywalking offense, in actuality he arrested him for failing to produce his identification upon request, and because under these circumstances failure to produce identification is not an offense there could be no probable cause supporting Mr. Miller's arrest for any offense.[12]  This argument is unavailing. An officer's subjective reason for making an arrest is immaterial where there is probable cause to arrest for any offense, and Officer Halley had probable cause to believe that Mr. Miller had committed the jaywalking offense.

The Supreme Court has squarely rejected the contention that "the offense establishing probable cause to arrest must be . . . based on the same conduct as[ ] the offense identified by the arresting officer at the time of arrest." *Devenpeck*, 543 U.S. at 153 (internal quotations omitted). In *Devenpeck*, the petitioner was told that he was under arrest for violation of Washington's Privacy Act, which prohibited recording a private conversation without all parties' consent. *Id.*

---

[12] For purposes of summary judgment, I do not decide whether under these circumstances Officer Halley could constitutionally detain Mr. Miller based on his failure to produce his identification under *Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542 U.S. 177, 188–89 (2004), and *Brown v. Texas*, 443 U.S. 47, 52–53 (1979). Because I hold that even full custodial arrest would have been proper based on probable cause to believe that Mr. Miller was committing the jaywalking offense, it is immaterial whether detention based on his failure to produce identification would have been permissible.

17 – OPINION AND ORDER

at 149–150. The arresting officers were subjectively unaware that the Washington Court of Appeals had held that his conduct—recording police during a traffic stop—did not violate the Privacy Act. *Id.* at 149–51. Nevertheless, the Supreme Court recognized that at the time of the arrest the officers were aware of facts that could have supported probable cause—facts different than those supporting arrest based on the tape recording—to arrest the petitioner for the crime of impersonating a police officer. *Id.* at 153–56. The Court concluded that notwithstanding that the stated reason for putting Mr. Devenpeck under arrest was his violation of the Privacy Act, his arrest would not violate the Fourth Amendment if the officers had probable cause to arrest him for the offense of impersonating a police officer (or any other offense). *Id.* at 152–54 (citing *Whren*, 517 U.S. at 812–13). Where an officer is aware of facts supporting probable cause to arrest for one offense, arrest may be proper even if at the time he articulates a different and unrelated offense as the reason for the arrest. *See id.*

Consequently, even if Officer Halley stated that Mr. Miller was under arrest for failing to produce his identification, and even if he subjectively intended to arrest Mr. Miller for failing to produce his identification, that he was aware of facts supporting arrest for the jaywalking offense is sufficient under the Fourth Amendment. *See Devenpeck*, 543 U.S. at 155 ("Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest."). As discussed above, I conclude that Officer Halley was aware of facts supporting probable cause to believe that Mr. Miller had committed the jaywalking offense.

\* \* \*

That Mr. Miller's arrest could not have been in violation of the Fourth Amendment does not preclude all remedies. It remains true that Oregon law forbids arrest for a traffic violation such as the jaywalking offense, and Mr. Miller may have a remedy under Oregon law. As the

18 – OPINION AND ORDER

*Moore* Court recognized, state law remedies for violation of state search-and-seizure laws are independent of the Fourth Amendment. *See Moore*, 553 U.S. at 174, 178 (contrasting Virginia law regarding exclusion of evidence obtained in violation of its statutory limits on search and seizure with federal remedies for violation of the Fourth Amendment, and noting that "it is not the province of the Fourth Amendment to enforce state law"). For instance, still pending before this court is a state law claim for battery—this claim is of course not affected by my grant of summary judgment for Defendants on the Fourth Amendment wrongful arrest claim.

## II.     Any Constitutional Right Violated Was Not Clearly Established

The doctrine of qualified immunity protects government officials from liability under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because I find that Officer Halley violated no constitutional right of Mr. Miller's in regards to the Fourth Amendment wrongful arrest claim, he is entitled to qualified immunity.

I further hold that even if Officer Halley's conduct in arresting Mr. Miller would have violated the Fourth Amendment, no constitutional right against such an arrest was clearly established at the time of the arrest. The inquiry into whether the right in question was "clearly established" "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id.* at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). This inquiry looks to the "specific context of the case" at the time of the officer's actions. *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) (quoting *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009)). Plaintiff has pointed to no case law of which Officer Halley should have been aware indicating that warrantless arrest based on probable cause for an Oregon traffic violation violates the Fourth Amendment. In light of the

19 – OPINION AND ORDER

Ninth Circuit's recognition in *Martinez-Medina* that arrest in violation of state law is not thereby violative of the Fourth Amendment, I cannot conclude that a reasonable officer would have been aware of clearly established law prohibiting Officer Halley's conduct. Officer Halley is entitled to qualified immunity as to Mr. Miller's § 1983 claim for wrongful arrest in violation of the Fourth Amendment.

## CONCLUSION

For the reasons stated above, I ADOPT the F&R [49] as to Plaintiff's Motion for Summary Judgment [32] and Defendants' Motion for Partial Summary Judgment [36] on Mr. Miller's negligence claim against the City of Portland. I GRANT summary judgment for Defendants on Mr. Miller's claim for wrongful arrest under the Fourth Amendment. Plaintiff's Motion for Summary Judgment [32] is DENIED; Defendants' Motion for Partial Summary Judgment [36] is GRANTED. Defendants' Motion to Withdraw Objections [53] is GRANTED.

IT IS SO ORDERED.

DATED this 29 day of January, 2014.

/s/Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

20 – OPINION AND ORDER